MABEL HAPPEL v. EMMA FORSYTH AND OTHERS.[1]

December 22, 1939.

No. 32,256.

[1]Reported in 289 N. W. 43.

*M. J. Owen* and *F. E. Withrow,* for relator.

*L. L. Duxbury,* for respondents.

GALLAGHER, CHIEF JUSTICE.

*Certiorari* to review a decision of the state industrial commission.

One Nels Forsyth for many years prior to his death was a resident of Houston, Minnesota. He died testate on January 7, 1935, aged 81 years, and left surviving him his widow, Emma Forsyth, a son, Henry, and two daughters, Edna and Coralynn, respondents herein. Decedent's property, consisting of several farms, some city real estate, and some personalty, was willed to his wife, Emma, for life, and the remainder in equal shares to the three children. Henry, the son, was named as executor in decedent's will. He qualified as such and promptly proceeded to wind up the affairs of the estate. He was discharged as executor and his bond released by order of the probate court on December 11, 1936.

Nels, until a few years before his death, was engaged in the ice business. A part of his estate consisted of an icehouse and a shed attached thereto in which he kept his horses and wagons. During the course of administration the executor employed decedent to tear down the shed. It was during the course of this work that decedent sustained the injuries from which he died. The work required but a few days. There was a conflict in the testimony as to whether the executor employed decedent or one Benson, his son-in-law; also as to whether the job was let for a fixed sum or at the rate of 40 cents per hour. On these material issues the industrial commission made findings favorable to the petitioner so she has no cause for complaint in this respect.

It seems to be the theory of petitioner that because the work was done by the executor in the course of administration it was within the provisions of the compensation law so as to make the heirs liable under the terms of the act. It appears that decedent at one time was engaged in the ice business but discontinued this

business several years before his death. Thereafter and up to about the time of his death, he operated a dray line on a small scale. He owned a horse or two and a wagon with which he did light trucking apparently for the purpose of keeping busy rather than for any profit realized from the business. Shortly after his appointment, the executor had an auction and sold the horses, wagon, and other implements. He did not carry on the dray line business nor did he engage in the ice business; in fact, for more than three years before the death of decedent, the icehouse had not been used. The building in which the ice business had at one time been conducted was sold. The estate had an opportunity to sell the lot on which it was located, and it was for this purpose that the shed was torn down.

1 Mason Minn. St. 1927, § 4268, being a part of the workmen's compensation act, provided:

"This act shall not be construed or held to apply to any common carrier by steam railroad, domestic servants, farm laborers or persons whose employment at the time of the injury is casual, and not in the usual course of the trade, business, profession or occupation of his employer; * * *."

Clearly, the employment involved herein was casual and not in the usual course of any trade, business, profession, or occupation of the owners of the property and certainly not in the course of the business of the executor of the estate. The industrial commission reached the right solution within the meaning of the workmen's compensation act.

Affirmed.